Filed 6/8/22  P. v. Philbrook CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Nevada)

----

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>NATHAN ROBERT PHILBROOK,<br><br>Defendant and Appellant. | C088692<br><br>(Super. Ct. No. F16000256C)<br><br>ORDER MODIFYING OPINION<br><br>[NO CHANGE IN JUDGMENT] |

THE COURT:

It is ordered that the opinion filed in this case on May 10, 2022, be modified as follows:

1.      On page 15, in footnote 12 insert the word, "states" after "subdivision (d)(2)."

Footnote 12 will now read as follows:

As noted, the first sentence of section 1170.95, subdivision (d)(2) states that "*the parties may waive a resentencing hearing* and stipulate that the petitioner is

eligible" to have his conviction vacated. (Italics added.) Here, the stipulation did not include an express waiver.

This modification does not change the judgment.


FOR THE COURT:



_____/s/_____
RENNER, Acting P. J.



_____/s/_____
KRAUSE, J.



_____/s/_____
MURRAY, J.*

_____

* Retired Associate Justice of the Court of Appeal, Third Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Filed 5/10/22  P. v. Philbrook CA3 (unmodified opinion)

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Nevada)

----

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>     v.<br><br>NATHAN ROBERT PHILBROOK,<br><br>     Defendant and Appellant. | C088692<br><br>(Super. Ct. No. F16000256C) |

Defendant Nathan Philbrook appeals from the denial of his petition to recall his manslaughter sentence pursuant to Penal Code section 1170.95 originally enacted in Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill 1437).[1]  On appeal, he first makes belated collateral attacks on the original judgment, contending his 23-year sentence, the result of a plea bargain, was void in three respects:  a prior strike was

---

[1] Undesignated statutory references are to the Penal Code.

1

neither pled nor admitted; the sentence was not run consecutively with his existing sentence, as required by the Three Strikes law; and a 12-month term, instead of a 16-month term, was erroneously imposed on one count.

Defendant also directly challenges the denial of his petition to recall his sentence. In his opening brief, he raised various grounds, including that section 1170.95 must be construed to apply to manslaughter convictions. But while this appeal was pending, Senate Bill No. 775 (2021-2022 Reg. Sess.) (Senate Bill 775) was enacted, which among other things, extends section 1170.95 to manslaughter convictions. We thereafter allowed the parties to submit supplemental briefs, and the parties now agree that remand is appropriate in light of Senate Bill 775. The parties, however, disagree as to whether an earlier stipulation between the prosecution and the defense that defendant is eligible for resentencing under 1170.95, previously rejected by the trial court, now obligates the trial court to resentence defendant without a section 1170.95, subdivision (d)(3) hearing. We conclude it does not.

We will therefore reverse and remand for further proceedings consistent with this opinion.

## FACTUAL AND PROCEDURAL BACKGROUND

### The Plea Bargain

Defendant and two codefendants[2] were charged with murder (§ 187, subd. (a)), with a special circumstances allegation that the murder was committed in the course of a robbery. Defendant and the prosecution thereafter reached a plea agreement, and defendant signed a plea form.[3] The form provided that in exchange for pleading guilty to

---

[2] The codefendants are not parties to this appeal.

[3] In exchange for this sentence, defendant testified for the prosecution against a co-defendant. However, the first trial ended prematurely when the trial court declared a mistrial after ruling that the prosecution had violated its obligations under *Brady v.*

2

voluntary manslaughter and attempted robbery, and providing truthful testimony at his codefendant's trial, the murder count would be dismissed, and defendant would receive a stipulated 23-year term.

The form specified a 22-year term for voluntary manslaughter, comprised of an 11-year upper term doubled for the strike prior. It also specified a one-year term for attempted robbery (a six-month term,[4] doubled for the strike). "[S]trike prior" was written in the column for "prior convictions, enhancements, & special allegations."[5] (Capitalization omitted.)

At sentencing, defense counsel told the trial court that defendant had signed a plea form. The court then asked defendant if he recognized the plea form. Defendant said, "yes" and confirmed he had had a chance to read it thoroughly; he answered "no" when asked if he had any questions about its contents.

---

*Maryland* (1963) 373 U.S. 83, by failing to disclose witness statements and information related to the plea agreements with testifying codefendants.

[4] This was error. "[T]he appropriate triad for . . . attempted second degree robbery offense is . . . 16 months, two years, or three years." (*People v. Moody* (2002) 96 Cal.App.4th 987, 990; §§ 18, 213, subd. (2)(b)). One-third the midterm would be eight months, not six months; doubled, the term would have been 16 months, not one year.

[5] Charges for voluntary manslaughter (§ 192, subd. (a)) and attempted second degree robbery (§§ 664/211) were handwritten into the amended information, but no prior strike was alleged. However, an email from the district attorney to defense counsel, discussing proposed terms, stated: "it appears from my review that your client has at least one conviction out of Nevada State that meets the elements of California Penal Code section 245(a)(1), Assault with a Deadly Weapon, and would be a strike . . . ." The presentence probation report reveals that defendant incurred convictions in 2015 in the state of Nevada for: battery with a deadly weapon (Nev. Rev. Stat. § 200.481.1), for which he was sentenced to 4-10 years; possession of a gun by a prohibited person, (Nev. Rev. Stat. § 200.481), for which he was sentenced to 2-5 years; and discharging a firearm at an occupied structure (Nev. Rev. Stat. § 202.285.1), for which he was sentenced to 2-5 years.

After advising him of his rights, the court asked defendant, "Pursuant to the plea form that you filled out as to the charge alleged in Count Two of the amended information, which violated Penal Code section 192(a), manslaughter, what is your plea?" "Guilty," defendant responded. The court continued: "And as to the allegation in Count Three of the amended information, violation of Penal Code section 664/211, that is attempted second degree robbery, what is your plea?" Again, defendant answered, guilty. After counsel concurred in the plea, the court stated, "The Court will accept the plea, [and], find that the defendant understands the initial[ed] items in the plea form . . . ."

In July 2018, defendant was sentenced to the stipulated 23-year aggregate term concurrent to a sentence defendant was then serving in the state of Nevada. Defendant did not appeal the judgment.

### The Section 1170.95 Petition

In January 2019, defendant petitioned under section 1170.95 to vacate his voluntary manslaughter conviction.[6] The petition attached the declaration of defense counsel and a stipulation between the parties. In the stipulation, the prosecutor made certain concessions and stated that defendant was eligible to have his voluntary manslaughter conviction vacated.[7]

---

[6] In December 2018, relying on section 1170, subdivision (d), defendant filed a motion to recall his sentence, allow defendant to withdraw his plea and resentence him based on then newly enacted section 1170.95, which would not go into effect until the following month. The prosecution agreed with the defense to allow defendant to withdraw his plea and enter a new plea to attempted robbery with a strike prior for a maximum sentence of five years to be served at 85 percent. The trial court issued a written ruling, denying the motion on the same grounds it would later deny defendant's section 1170.95 petition. Defendant does not appeal this ruling.

[7] The declaration stated that defense counsel and the prosecutor agreed defendant was eligible for relief. It further stated that the parties had "agreed" that defendant would be allowed to withdraw his plea to voluntary manslaughter, but his plea to attempted robbery and admission of a strike prior would stand and he would be sentenced to a maximum

Without issuing an order to show cause and holding a section 1170.95, subdivision (d)(3) hearing, the trial court denied defendant's request for section 1170.95 relief. In a written ruling, the court explained that it had reviewed the trial testimony from the codefendant's trial, along with defendant's testimony. The court then stated: "Accepting [defendant's] trial testimony solely for the purposes of this motion, the Court finds that [defendant], admittedly, was the primary organizer and the leading participant in the attempt to steal and rob marijuana plants. As the leader, he was armed and encouraged and/or was aware that another accomplice was armed. He instigated the invasion into the building that awoke the victim. [Defendant] aimed his firearm using a laser scope to shine the scope light onto the victim. This action caused the victim to flee from him into the path of the oncoming armed accomplice who shot and killed [the victim], during the attempted commission of the robbery. *Thus, the proposed stipulations that suggest ultimate findings of fact are without merit and contrary to the Court's analysis herein.*" (Italics added.)

The court went on to state: "In this case, based upon [defendant's] testimony and other evidence presented at the trial, a jury might reasonably reject his version and find that he 'was the actual killer' or that he '[aided] or assisted the actual killer' or 'that he

term of five years in state prison at 85 percent and that defendant would continue to comply with his agreement to testify truthfully against the codefendant. The stipulation reads in pertinent part: "1. Defendant Philbrook was not the actual killer. Defendant Finley Fultz was the actual killer. [¶] 2. Defendant Philbrook did not intend that anyone be killed. He did not aid, abet, advise, direct, request, or assist Mr. Fultz in the commission of a murder. [¶] 3. According to the law Defendant Philbrook did not act with reckless indifference to human life. [¶] 4. Defendant Philbrook was charged in an information under a theory of felony murder as defined by then-existing law. [¶] 5. Defendant Philbrook accepted a plea offer to a charge of voluntary manslaughter in lieu of a trial. [¶] 6. Defendant Philbrook could not be convicted of first or second degree murder because of changes to Penal Code §§ 188 and 189 made effective January 1, 2019. [¶] 7. Defendant Philbrook is eligible for relief under Penal Code § 1170.95, effective January 1, 2019. He is eligible to have his plea of voluntary manslaughter vacated."

5

was a major participant in the underlying felony (attempted robbery) that resulted in the death of a person.' [¶] The Court finds no factors to support a withdrawal of the plea, nor to resentence this defendant. The addition of Penal Code section 1170.95 . . . does not provide the benefit sought by this defendant pursuant to the statutory criteria described in the statute.' "

## DISCUSSION

### I. The Original Plea Bargain

Defendant contends his plea bargain and the resulting judgment are illegal and must be vacated. He advances three arguments in support: (1) a strike was neither alleged in the pleadings nor admitted in open court; (2) his sentence, as a two-strikes sentence, should have run consecutively with his existing Nevada sentence; and (3) the 12-month term for attempted robbery should have been 16 months. We conclude defendant has waived the challenge that his sentence is unauthorized.

"The rule that defendants may challenge an unauthorized sentence on appeal even if they failed to object below is itself subject to an exception: Where the defendants have pleaded guilty in return for a *specified* sentence, appellate courts will not find error even though the trial court acted in excess of jurisdiction in reaching that figure, so long as the trial court did not lack *fundamental* jurisdiction. The rationale behind this policy is that defendants who have received the benefit of their bargain should not be allowed to trifle with the courts by attempting to better the bargain through the appellate process." (*People v. Hester* (2000) 22 Cal.4th 290, 295.) A lack of fundamental jurisdiction is "a complete absence of authority with respect to the subject of the dispute" and cannot be conferred by consent or estoppel. (*People v. Ellis* (1987) 195 Cal.App.3d 334, 343.) But for actions taken " 'in excess of jurisdiction, i.e. beyond statutory authority,' " jurisdiction can be supplied by consent or estoppel. (*Ibid.*)

Here, defendant agreed to the sentence imposed. The signed plea sheet stated he would receive a 22-year term for voluntary manslaughter, as the 11-year upper term

doubled for the "strike prior," plus a one-year term for attempted robbery, as a one-year term doubled for the strike. Defendant confirmed to the trial court that he had read and understood the plea form. He raised no objections at sentencing and did not appeal from the sentence imposed. While the prior strike allegation was inexplicably missing from the amended information, the record reflects that it was no surprise to the defense and was in fact contemplated by the parties. (See *People v. Houston* (2012) 54 Cal.4th 1186, 1225, 1228 [statutory requirement that "deliberate and premeditated" be charged in the accusatory pleading for attempted murder forfeited where defendant had notice of the sentence he faced and raised no objection in the trial court; "[a] timely objection to the adequacy of the indictment would have provided an opportunity to craft an appropriate remedy"].)

In sum, because defendant agreed to the sentence imposed, raised no objections at sentencing (nor did he appeal), and the trial court did not lack fundamental jurisdiction in imposing it, defendant cannot now challenge his sentence as unauthorized. (*People v. Hester, supra,* 22 Cal.4th at p. 295 [" 'When a defendant maintains that the trial court's sentence violates rules which would have required the imposition of a more lenient sentence, yet the defendant avoided a potentially harsher sentence by entering into the plea bargain, it may be implied that the defendant waived any rights under such rules by choosing to accept the plea bargain' "].)

## II. Section 1170.95

Defendant also challenges the denial of his section 1170.95 petition to resentence him sans the voluntary manslaughter sentence. In his opening brief, he maintained that because the trial court dismissed his petition without issuing an order to show cause, the issue to be addressed was whether he can make a prima facie case for relief, or whether the stipulation between the prosecution and defense should be honored. As to his voluntary manslaughter conviction, he advanced three contentions: (1) section 1170.95's exclusion of those convicted of manslaughter violates equal protection; (2) the exclusion

also violates the prohibition against cruel and/or unusual punishment and the right to due process; and (3) the text of section 1170.95 must be construed to include plea agreements for lesser-included manslaughter offenses.

The contentions related to the nature of his conviction were rendered moot when Senate Bill 775 was enacted. Section 1170.95 now unquestioningly applies to manslaughter convictions, and the parties therefore agree remand is appropriate.

The parties, however, disagree as to effect of the proposed stipulation between the prosecution and the defense that the trial court refused to accept. As noted, the proposed stipulation said defendant was eligible for resentencing under section 1170.95 and made certain related concessions. (See fn. 7, *ante*.)

Defendant takes the position that the stipulation obviates the need for a section 1170.95, subdivision (d)(3) hearing on his entitlement for resentencing, and therefore this court should direct the trial court to grant relief and proceed directly to resentencing. The People maintain that the trial court is not required to accept a stipulation under section 1170.95, subdivision (d)(2), and therefore on remand the trial court retains authority to determine whether defendant is eligible for relief. Based on the arguments presented in this appeal, we agree with the People.

Defendant contends we should order the trial court to grant him relief based on the language in section 1170.95, subdivision (d)(2). The first sentence, provides: "The parties may waive a resentencing hearing and stipulate that the petitioner is eligible to have the murder, attempted murder, or manslaughter conviction vacated and to be resentenced."[8] The second sentence goes on to state: "If there was a prior finding by a court or jury that the petitioner did not act with reckless indifference to human life or was

---

[8] Senate Bill 775 amended the first sentence in subdivision (d)(2) of section 1170.95 to add attempted murder and manslaughter. Other than that amendment, this provision is the same as when the trial court originally ruled upon defendant's petition.

8

not a major participant in the felony, the court *shall vacate* the petitioner's conviction and resentence the petitioner." (§ 1170.95, subd. (d)(2), italics added.)

As the People point out, use of the word "shall" in the second sentence mandates that the trial court vacate the conviction if the requisite prior findings have been made. No words of mandate are contained in the first sentence. While the first sentence allows the parties to stipulate to eligibility, it does not require the trial court to accept a stipulation and grant relief. If that had been the legislative intent, we believe the Legislature would have said so in express terms. For example, the Legislature could have expressly stated that the trial court "shall" accept the stipulation of the parties and vacate the petitioner's conviction.

Indeed, repeatedly using the word "shall," the Legislature mandated judicial action in other provisions within section 1170.95[9] " ' " 'It is a well recognized principle of statutory construction that when the Legislature has carefully employed a term in one place and has excluded it in another, it should not be implied where excluded.' " ' " (*People v. Bland* (2002) 28 Cal.4th 313, 337.) Also, "[w]hen the Legislature uses materially different language in statutory provisions addressing the same subject or related subjects, the normal inference is that the Legislature intended a difference in

---

[9] In subdivision (b)(3) of section 1170.95, the Legislature provided that if the petitioner requests, the court "*shall appoint counsel* to represent the petitioner." (Italics added.) In subdivision (c), it provided that, after a petition has been filed and the prosecution's response and the defendant's reply have been filed, "the court *shall hold a hearing* to determine whether the petitioner has made a prima facie case for relief." (Italics added.) If the defendant establishes a prima facie case, "the court *shall issue an order to show cause*." (Italics added.) If the court declines to make an order to show cause, "it *shall provide a statement* fully setting forth its reasons for doing so." (Italics added.) Subdivision (d)(1) provides that if the court issues an order to show cause "the court *shall hold a hearing* to determine whether to vacate" the conviction within a specified time period. (Italics added.) If the prosecution fails to sustain its burden of proof, subdivision (d)(3) mandates the following judicial action: the conviction "*shall be vacated*" and "*the petitioner shall be resentenced*" on the remaining charges. (Italics added.)

meaning." (*People v. Trevino* (2001) 26 Cal.4th 237, 242.) We, therefore, decline to read "shall" or a mandate into the first sentence of subdivision (d)(2) of section 1170.95.

In our view, our reading of section 1170.95 is consistent with long-standing law affording trial courts the authority to reject stipulations of the parties. " 'While it is entirely proper for the court to accept stipulations of counsel that appear to have been made advisedly, . . . the court cannot surrender its duty to see that the judgment to be entered is a just one, nor is the court to act as a mere puppet in the matter.' " (*California State Auto. Assn. Inter-Ins. Bureau v. Superior Court* (1990) 50 Cal.3d 658, 664 [addressing a stipulated judgment pursuant to Code of Civil Procedure § 664.6].) A court may, for example, reject a stipulation that is contrary to public policy.[10] (*Ibid*.)

Additionally, "a stipulation between the parties may not bind a court on questions of law, and this includes legal conclusions to be drawn from admitted or stipulated facts."

---

[10] We note there is a public policy implicated here given that the original disposition of this case was based on a plea bargain. The Legislature gave trial courts the authority to reject negotiated plea agreements. (See *People v. Stamps* (2020) 9 Cal.5th 685, 706, 708 ["courts have broad discretion to withdraw their approval of negotiated pleas"].) "The court's authority to withdraw its approval of a plea agreement has been described as 'near-plenary.' " (*Id*. at p. 708, citing *People v. Mora-Duran* (2020) 45 Cal.App.5th 589, 595; *People v. Stringham* (1988) 206 Cal.App.3d 184, 195.) " 'In exercising their discretion to approve or reject proposed plea bargains, *trial courts are charged with the protection and promotion of the public's interest in vigorous prosecution of the accused, imposition of appropriate punishment, and protection of victims of crimes*. [Citation.] For that reason, a trial court's approval of a proposed plea bargain must represent an informed decision *in furtherance of the interests of society . . . .*' " (*Stamps*, at p. 706, italics added.) This legislative provision of trial court discretion concerning plea bargaining — recognizing the role of the court in protecting the public's interest — is an important public policy and reinforces our conclusion that the trial court here has the discretion to reject the stipulation. Indeed, if the reduced sentence (sans the term of imprisonment for voluntary manslaughter) had been presented to the trial court as the originally negotiated sentence, the court may have rejected it, finding that it was not in furtherance of the interests of society. (See *People v. Scarano* (2021) 74 Cal.App.5th 993, 1009.)

(*Leonard v. City of Los Angeles* (1973) 31 Cal.App.3d 473, 476 (*Leonard*).) With the exception of the stipulation that defendant was not the actual killer, the rest of the paragraphs in the stipulation amount to legal conclusions: Defendant "did not intend that anyone be killed"; "did not aid, abet, advise, direct, request, or assist the actual killer in the commission of a murder"; "*According to the law*, [defendant] did not act with reckless indifference to human life,"; and "could not be convicted of first or second degree murder because of changes to Penal Code §§ 188 and 189 made effective January 1, 2019." (Italics added.) (See fn. 7, *ante*.) Moreover, the parties did not even set forth stipulated facts supporting these legal conclusions. A trial court is not normally required to accept such stipulations. (*Leonard*, at p. 476.) The trial court recognized as much, stating at an earlier hearing in response to a statement concerning the stipulation made by counsel for a codefendant: "You also can't stipulate as to conclusions of law. But I understand the intent of their stipulation and what they are trying to express which is just an agreement between those two as to what they think the facts are or what they think the law is meant to be. The Court will consider it in light of the actual law and the facts." Ultimately, as noted, the court here found that "the proposed stipulations that suggest ultimate findings of fact are without merit and contrary to the Court's analysis herein." (Italics added.)

The Legislature must have been aware of these settled principles concerning stipulations when it enacted section1170.95, subdivision (d)(2) in Senate Bill 1437 and later amended it in Senate Bill 775. As we have recently noted, " ' "the Legislature is deemed to be aware of existing laws and judicial decisions in effect at the time legislation is enacted and to have enacted and amended statutes ' "*in the light of such decisions as have a direct bearing upon them.*" ' " ' " (*People v. Hola* (2022) 77 Cal.App.5th 362, 370, quoting *People v. Castillolopez* (2016) 63 Cal.4th 322, 331, italics added; *People v. Licas* (2007) 41 Cal.4th 362, 367; *People v. Overstreet* (1986) 42 Cal.3d 891, 897.)

11

Here, nothing in the text or history of Senate Bills 1437 or 775 indicates a legislative intent to mandate that trial courts accept stipulations proposed under section 1170.95, subdivision (d)(2), thereby requiring trial courts to ignore established facts that are inconsistent with the stipulation.[11] Instead, we read the plain language of the statute — omitting the word "shall" or other language indicating a mandatory grant of relief based on a stipulation — as consistent with the long-standing authority of trial courts to exercise discretion to reject stipulations, especially those that are stipulations to legal conclusions.

Defendant, however, maintains, in his supplemental reply brief, that our high court in *People v. Lewis* (2021) 11 Cal.5th 952, 964 (*Lewis*), construed the first sentence of subdivision (d)(2) to mandate relief without a hearing, when the parties stipulate to eligibility. We think this reading stretches the *Lewis* court's reasoning beyond its intended scope.

One of the issues the *Lewis* court was called upon to decide was "when does the right to appointed counsel arise?" (*Lewis, supra,* 11 Cal.5th at p. 957.) The court held section 1170.95's statutory language and legislative intent established that petitioners are entitled to the appointment of counsel upon the filling of a facially sufficient petition.

---

[11] The following facts identified by the trial court tended to prove that defendant was a major participant: defendant "admittedly, was the primary organizer and the leading participant in the attempt to steal and rob marijuana plants," "[a]s the leader, he was armed and encouraged and/or was aware that another accomplice was armed," and "[h]e instigated the invasion into the building that awoke the victim." Also, contrary to the factually unsubstantiated legal conclusion that "*according to the law* [defendant] did not act with reckless indifference to human life," (italics added) the facts tending to establish major participation tended to prove defendant also acted with reckless disregard for life in combination with the following: Defendant "aimed his firearm using a laser scope to shine the scope light onto the victim," "caus[ing] the victim to flee from him into the path of the oncoming armed accomplice who shot and killed [the victim], during the attempted commission of the robbery."

(*Ibid*.)  The provision at issue in *Lewis* was subdivision (c) of section 1170.95, which provided in pertinent part:  " 'The court shall review the petition and determine if the petitioner has made *a prima facie showing that the petitioner falls within the provisions of this section*.  If the petitioner has requested counsel, the court shall appoint counsel. . . .  If the petitioner makes *a prima facie showing that he or she is entitled to relief*, the court shall issue an order to show cause.' "  (*Id*. at p. 961.)  The Attorney General contended — and the Court of Appeal had held — that the two references to " 'a prima facie showing' " required two distinct, sequential inquiries:  one " 'that petitioner "falls within the provisions" of the statute,' " and a second " ' "that he or she is entitled to relief." ' "  (*Ibid*.)  According to the Attorney General, the first sentence related to the question of whether the defendant was *eligible* for relief, while the second referred to the question of whether the petitioner was *entitled* to relief.  (*Id*. at p. 963.)

Looking to the use of the word "eligible" in subdivision (d)(2), the *Lewis* court determined there was no difference between eligibility and entitlement.  (*Lewis, supra*, 11 Cal.5th at p. 963.)  The court explained:  "[S]ubdivision (d)(2) provides in part that '[t]he parties may waive a resentencing hearing and stipulate that the petitioner is *eligible* to have his or her murder conviction vacated and for resentencing.' [Citation.]  If entitlement is something more than eligibility, *'why would a stipulation that the petitioner is merely eligible for relief obviate the need for a hearing on entitlement*?' [Citation.]  '[S]ection 1170.95's interchangeable references to eligibility and entitlement repudiate the notion that the concepts have different meanings.' [Citation.]  It thus follows that there is no syntactic basis for interpreting subdivision (c)'s first sentence to delay petitioner's right to counsel."  (*Id*. at p. 964, italics added.)

Based on the court's rhetorical question " 'why would a stipulation that the petitioner is merely eligible for relief obviate the need for a hearing on entitlement?,' " defendant here maintains that the *Lewis* court held that the first sentence in subdivision (d)(2) "requires a grant of relief without a hearing just as much as the second."

13

According to defendant's read of *Lewis*, a stipulation " 'obviate[s] the need for a hearing on entitlement.' " (Bold text and underlining omitted.)

But nothing in the rhetorical question the *Lewis* court posed suggests that section 1170.95 undermines the trial court's long-standing authority to reject a stipulation of the parties. That issue was not on our high court's radar in *Lewis*. Nor was the issue addressed in any other case defendant has cited. " 'It is axiomatic that cases are not authority for propositions not considered.' " (*People v. Jennings* (2010) 50 Cal.4th 616, 684.)

Defendant asks what purpose does the first sentence of section 1170.95, subdivision (d)(2) serve if relief is not mandatory? He essentially argues that the first sentence has no purpose otherwise. He maintains the parties could stipulate and waive a hearing without the Legislature stating they could do so. However, it is possible that the first sentence is intended to tell prosecutors that they have the authority to stipulate to eligibility and waive a hearing. If the Legislature had not expressly approved of this authority, prosecutor offices might have felt that after a conviction has long since been final and victims' families had obtained closure, they did not have the authority to, in effect, overturn the conviction. The Legislature could also have seen the first sentence in subdivision (d)(2) as encouraging the parties to arrive at agreements to avoid hearings in appropriate cases, thereby reducing the impact of the new legislation on court resources. But in any event, nothing indicates the trial court is required to accept the agreement of the parties.

We make one last observation regarding the stipulation here. The parties stipulated that defendant was "eligible" for resentencing. It is not at all clear to us that the prosecution understood "eligible" to mean the same thing as "entitled to" as our high court in *Lewis* later clarified. Particularly since there was no express waiver of the

14

section 1170.95, subdivision (d)(3) hearing included in the stipulation,[12] it could be read as stipulating that a prima facie case had been made based on the stipulation and defendant was entitled to the hearing. Hence, it is not at all clear that defendant is entitled to the relief he seeks from this court even if the stipulation's legal conclusions must be read as binding.

As the Attorney General concedes here, the trial court applied the wrong standards in denying defendant's section 1170.95 petition. We will therefore remand for further proceedings under section 1170.95. Upon remand, the trial court may accept the parties' stipulation and proceed to resentencing along the lines of the agreement set forth in defense counsel's declaration. Or it may reject the stipulation and order a hearing under section 1170.95 subdivision (d)(3) to determine whether defendant is entitled to relief.

\* \* \* \* \*

---

[12] As noted, the first sentence of section 1170.95, subdivision (d)(2) that "*the parties may waive a resentencing hearing* and stipulate that the petitioner is eligible" to have his conviction vacated. (Italics added.) Here, the stipulation did not include an express waiver.

## DISPOSITION

The judgment is reversed.  The matter is remanded for further proceedings consistent with this opinion.


                                                                 /s/
                                                      MURRAY, J.*

We concur:


   /s/
RENNER, Acting P. J.


   /s/
KRAUSE, J.

---

\* Retired Associate Justice of the Court of Appeal, Third Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.